# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT H. TAYLOR,**

      **Petitioner,**

v.                                      **Civil Action No. 5:15cv136**
                                                  **(Judge Stamp)**

**TERRY O'BRIEN, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On October 26, 2015, the *pro se* Petitioner, Robert Taylor ("Petitioner"), an inmate at USP Hazelton, filed a Habeas Corpus Petition pursuant to 28 U.S.C. § 2241 seeking additional credit against his federal sentence. ECF No. 1. On November 2, 2015, he paid the five dollar filing fee. ECF No. 5. On December 7, 2015, the court made a preliminary review of the petition and determined that summary dismissal was not warranted. ECF No. 7. Accordingly, an Order to Show Cause was issued against the Respondent. Id. On January 7, 2016, the Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF. No. 12. On January 8, 2016, a Roseboro Notice [ECF No. 13] was issued, and on January 22, 2016, the Petitioner filed his response. ECF No. 15.

### II. Facts

On March 26, 2007, the Petitioner was arrested by officers in Fayetteville, North Carolina, and charged with Conspiracy to Commit Robbery with a Dangerous Weapon;

Attempted First Degree Murder; Assault with a Deadly Weapon With the Intent to Kill Inflicting Serious Injury; Driving While License Revoked; Reckless Driving to Endanger; Resisting a Public Officer; Hit and Run and Failing to Stop for Property Damage; and Failing to Stop for a Red Light. The Petitioner was remanded to custody and placed in the Cumberland County, North Carolina, Jail. ECF No. 12-3 at 16.

On November 8, 2007, the Petitioner was named in the federal indictment filed in the Eastern District of North Carolina, Case No. 5:07cr324-1. More specifically, the Petitioner was charged with Count One: Conspiracy to Commit Robbery from March 15, 2007, to March 26, 2007; Count Two: Using, Carrying and Possessing a Firearm During in and in Relation to a Crime of Violence and Aiding and Abetting on March 26, 2007; and Count Three: Possession of a Firearm by a Felon on March 26, 2007. On January 18, 2008, the Petitioner was transferred to the custody of the United States Marshall Service ("USMS") pursuant to a Federal Writ of Habeas Corpus ad Prosequendum. He was returned to Cumberland County on January 31, 2008. ECF No. 12-3 at 3. On April 17, 2008, the Petitioner was again transferred to the custody of the USMS pursuant to a Federal Writ of Habeas Corpus ad Prosequendum. Id. He was then returned to Cumberland County on April 25, 2008. Id. On September 10, 2008, the Petitioner was again transferred to the secondary custody of the USMS pursuant to a Federal Writ of Habeas Corpus ad Prosequendum. Id. On October 8, 2008, the Petitioner was

---

[1]The Petitioner's offense conduct included shooting a police officer in the upper torso at close range. The Petitioner's criminal history included a felony conviction for common law robbery, a felony conviction for assault with a deadly weapon inflicting serious injury, and two felony convictions for aggravated robbery. See ECF No. 93 at 1, Criminal Action No. 5:07cr324 (E.D.N.C.).

sentenced in the United States District Court for the Eastern District of North Carolina following his guilty plea to Counts Two and Three of the federal indictment. The Petitioner received a term of life as to Count Three and a term of 120 months as to Count Two. The term of 120 months was to run consecutive to the life sentence. The federal court was silent in regards to concurrence of any impending state sentence in Cumberland County, North Carolina which might be imposed in the future. ECF No. 12-3 at 5-10. On October 11, 2008, the Petitioner was returned to the Cumberland County Jail. ECF No. ECF No. 12-3 at 3.

On February 16, 2009, the Petitioner was sentenced in the Superior Court in Cumberland County, North Carolina, to a minimum term of 282 months and a maximum term of 348 months imprisonment for the offenses which had resulted in his arrest on March 26, 2007. ECF No. 12-3 at 12. The Judgment and Commitment Order further provided that the Petitioner was to be placed in the custody of the North Carolina Department of Corrections and was to be given credit for 694 days spent in confinement prior to the date of the Judgment. Id. on December 8, 2011, the Superior Court entered an Amended Order to effectuate the following provision of his plea agreement: "Pursuant to a pretrial conference in this matter, the Defendant agrees to accept an active sentence of 282 months minimum, 348 months maximum to run concurrent with any sentence the Defendant is now serving." As noted in the Amended Order, the Petitioner, his trial attorney, and the prosecutor all anticipated that the Petitioner would return to federal custody to serve his state and federal sentences concurrently. However, because the Petitioner was in state custody at the time of his plea in federal court, the sentence imposed upon his plea in state court could not run concurrently with

3

his federal sentences as was anticipated by the parties. Therefore, the Petitioner had yet to receive the benefit of his plea bargain. Accordingly, the Amended Order vacated the Petitioner's Cumberland County Judgment and released the Petitioner on an unsecured bond, thereby allowing for the Petitioner to be taken into federal custody to begin his federal sentences. The Superior Court retained its authority to resentence him after the start his federal sentence. ECF No. 12-3 at 16-18.

On December 9, 2011, the Petitioner was received in federal custody and commenced his federal sentence. ECF No. On May 11, 2012, the Petitioner was resentenced in the Superior Court of Cumberland County, North Carolina to a minimum term of 282 months and a maximum term of 340 months with credit for 1718 days spent in confinement prior to the date of the Judgment. ECF No. 12-3 at 26-27. Although the Court can find no specific designation, it appears that the BOP accepts that this Amended Judgment was to run concurrent with his previously imposed federal sentence.

When the Petitioner was originally received into federal custody, the BOP prepared a sentence computation for him which commenced his life sentence on the date he was received into primary federal custody, which was December 9, 2011. The BOP staff calculated the petitioner's sentence without any prior custody credit from the date of his arrest because he had not yet been resentenced by the state. The Petitioner then requested the application of credit towards his federal sentence for all time spent in state custody from the date of his arrest on March 27, 2007. The BOP construed his request for credit as a Request for a *nunc pro tunc* designation. On October 5, 2015 after review of the 5 factors found under title 18 U.S.C. § 3621(b), the BOP denied the

Petitioner's request. ECF No. 12-3 at 30-31. However, since that original denial, the BOP has awarded the Petitioner some of his requested prior custody credit. Specifically, the BOP has awarded him 693 days of prior custody credit from March 26, 2007, through February 15, 2009, the date prior to his initial State sentencing. The BOP used the original state sentence because only the Judgment was vacated, not the conviction. Moreover, because Good Conduct Time is not calculated on a life sentence because there is no mechanism to reduce the release date, the Petitioner's projected release date is life. ECF No. 12-3 at 22.

### III. Contentions of the Parties

**A. Petitioner's § 2241 Motion**

The Petitioner claims that the BOP has unlawfully denied him credit for time served in a state prison. More specifically, the Petitioner alleges that the BOP abused its discretion in rejecting his nunc pro tunc designation. In the alternative, the Petitioner argues that a federal sentence begins to run "from the date of the order of commitment to the Marshal."

**B. Respondent's Motion**

Respondent seeks dismissal of this matter and argues that the Petitioner's sentence commenced on December 9, 2011, the date he was received into primary federal custody. The Respondent also maintains that the Petitioner has been awarded all prior custody credit to which he is entitled. Finally, the Respondent argues that the Petitioner's request for *nunc pro tunc* designation was properly denied.

### C. Petitioner's Response

In his response, the Petitioner maintains that federal authorities made a mistake in failing to designate the state prison as the place of confinement for his federal sentence, because such a designation was necessary to carry out the intention of the state sentencing court that his state sentence be served concurrently with his federal sentence. In addition, the Petitioner reiterates his argument that United States Marshal Service did not act in obedience with the orders of commitment.

### IV. Standard of Review

A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260 (4th Cir. 1998). Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th

Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal,

7

where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## V. Analysis

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination of when the sentence commences. United States v. Wilson, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id.

Under section 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody while waiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served." As a general rule, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). When an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*, the original sovereign has "merely loan[ed] that prisoner to federal authorities" and does not forfeit its primary jurisdiction. Id. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id.

Here, the State of North Carolina did not lose its primary jurisdiction over the Petitioner when it lent him to federal authorities pursuant to the writ of *habeas corpus ad prosequendum*. North Carolina maintained primary jurisdiction over the Petitioner until December 8, 2011, when the North Carolina judge vacated his Cumberland County Judgment and released him on an unsecured bond, thereby allowing him to be taken into federal custody to begin his federal sentence.

18 U.S.C. § 3621(b) grants the BOP discretion to select the place of a federal prisoner's confinement, stating that the agency may "designate any available penal or correctional facility that meets minimum standards of health and habitability . . . , [regardless of] whether [the facility is] maintained by the Federal Government or otherwise . . . , that [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). "The phrase 'or otherwise' refers to the BOP's authority to designate federal prisoners to state prisons." Jefferson v. Berkebile, 688 F.Supp.2d 474, 486 (S.D.W. Va. 2010) (citing Evans, 159 F.3d at 911-12). The statute specifically directs the BOP to consider five factors in making this determination:

1. the resources of the facility contemplated;
2. the nature and circumstances of the offense;
3. the history and characteristics of the prisoner;
4. any statement by the court that imposed the sentence –
    (A)  concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
    (B)  recommending a type of penal or correctional facility as appropriate; and
5. any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Under this statute, the BOP has the power to order a *nunc pro tunc* designation of a state facility as the place of imprisonment for a federal prisoner, essentially allowing

for a retroactive concurrency through which the federal prisoner can receive credit against his federal sentence for time already served in the state facility. Jefferson, 688 F.Supp.2d at 487 (citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 245-46 (3d Cir. 2005)).

The BOP's policy on designating a non-federal institution for the service of a federal sentence is set forth in BOP Program Statement 5160.05. "Normally, designating a non-federal institution for the inmate is done when it is consistent with the federal sentencing court's intent." Id. at 4. The sentencing court's intent can be established at the time the sentence is imposed, by way of an order or recommendation, as recorded in a document such as a judgment and order of commitment. Failing that, an inmate can request a *nunc pro tunc* designation, as the Petitioner has done in the instant case.

As part of determining whether to designate a state institution for service of a federal sentence, it is BOP policy to send a letter to the prisoner's sentencing court, with copies to the U.S. Attorney's Office and U.S. Probation Office in which the BOP inquires as to the sentencing court's position on applying a retroactive designation. See BOP Program Statement 5160.05 at 6. In keeping with this policy, on July 17, 2015, the sentencing court was contacted. However, no response was received. Thereafter, on October 5, 2015, the BOP reviewed the factors under 18 U.S.C. § 3621(b) and found as follows:

> **Factor (1)-the resources of the facility contemplated:**
> The inmate was in the primary custody of the Bureau of Prisons and designated to USP Hazelton (Security Level-High);

> **Factor (2)-the nature and circumstances of the offense:**
> Federal Offense-18 U.S.C. §922; 924(c); Using, Carrying, and Possessing a Firearm During and in Relation to a Crime of Violence, and A&A. Term – Life plus 120 months.
>
> State Offense-Attempted First Degree Murder, Poss of FA by Felon, and Assault With a Deadly Weapon With Intent to Kill; Term – 282 months to 348 Months.
>
> Federal and States charges are related in the PSI instant offense conduct.
>
> **Factor (3)-the history and characteristics of the prisoner (to include institutional adjustment and prior criminal history):** Excluding the aforementioned state and federal convictions, the following convictions are listed within the Pre-Sentence Investigation Report: Assault on a Female, Common Law Robbery, Petty Theft, Assault With a Deadly Weapon Inflicting Serious Injury.
>
> The BOP Disciplinary Record have been reviewed with the following conduct has listed: None.
>
> No State Disciplinary information has been received.
>
> **Factor (4) any statement by the court that imposed the sentence:** The sentencing court was contacted to obtain an opinion regarding the granting of a retroactive designation on July 17, 2015. Ordinarily, the Bureau gives the Court 60 days to respond to the request. No response has been received from the Court regarding the retroactive designation request. There is no indication the court has responded to the Bureau's request in PACER.
>
> **Factor (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 924(a)(2) of Title 28."** N/A

ECF No. 12-3 at 31.

While the Petitioner may disagree with the BOP's evaluation on that Worksheet, the BOP's *nun pro tunc* determination is reviewed for abuse of discretion, and its findings are afforded substantial deference and entitled to a presumption of regularity.

See Trowell, 135 F. App'x at 593 (citing Barden v. Keohane[2], 921 F.2d 476, 478 (3d Cir. 1991)); Jefferson, 688 F. Supp.2d at 496. It appears that the BOP considered the five factors required. Based on this evidence the Court finds that the BOP did not abuse its discretion.

In addition to his allegation that the BOP abused its discretion in rejecting his *nunc pro tunc* designation, the Petitioner also alleges in his response that the BOP overstepped its authority when it did not give force to the state judge's order that the sentences be run concurrently. However, the order of a state court judge is irrelevant in determining when a federal sentence begins to run under 18 U.S.C. § 3585. Bonner v. Rivera, 2008 WL 565494, *5 (D.S.C. 2008) citing Del Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir. 1992) and Coccimiglio v. DeRosa, 2006 WL 1897269 (D.Ariz. 2006).

The Court further notes that the Petitioner's reliance on U.S. v. Croft, 450 F.2d 1094 (6th Cir. 1971) is misplaced. First, it is a Sixth Circuit opinion which is not binding on this Court. In addition, the case is clearly distinguishable. In Croft, the original state sentence, which was entered after the federal sentence, clearly stated that it was to run concurrent with the federal sentence. No such designation was made in the Petitioner's original state sentencing order. Furthermore, the State of North Carolina accepted and lodged a detainer from the US Marshal Service on April 27, 2009, which indicated that

---

[2] In Barden, the petitioner brought a § 2241 habeas petition to gain credit for time served in a state prison by having that state facility designated a federal facility *nunc pro tunc*. In pursuing his administrative remedies, the BOP declined to recognize that it had the statutory authority to make such a designation. The Barden court held that the petitioner was "entitled to have his request considered by the agency with the statutory power to grant it and that 28 U.S.C. § 2241 is available to compel that consideration." 921 F.2d at 484. After Barden, the BOP began to analyze requests for retroactive designation pursuant to 18 U.S.C. § 3621(b). In addition, BOP Policy Statement 5160.05 specifically references Barden with respect to inmate requests for *nunc pro tunc* designation.

the South Carolina Department of Corrections would notify the USMS approximately thirty (30) days before his release. Moreover, the North Carolina State Superior Court Judge recognized in the amended order entered on December 8, 2011, that: " [b]ecause the Defendant was in State custody at the time of his plea in Federal court, the sentence imposed upon his plea in State court could not run concurrently with his federal sentence as was anticipated by the parties." ECF No. 12-3 at 17.

Finally, the Court notes that unless the Petitioner's life sentence is vacated, any additional credit for time spent in state custody is meaningless.[3] Because parole does not exist for federal sentences imposed after the Federal Sentencing Guidelines were formally adopted in 1987, additional custody credit cannot reduce the Petitioner's life sentence.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 12] be **GRANTED**, and the Petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the

---

[3]The Court is aware that on June 27, 2016, the Fourth Circuit granted the Petitioner's motion pursuant to 28 U.S.C. § 2244, 2255(h)(2) and authorized him to file a second or successive § 2255 motion. In re: Robert Hampton Taylor, No. 16-985 (4th Cir.). The Petitioner now has pending a § 2255 motion alleging that his sentence exceeds the maximum punishment under the law in light of Johnson v. United States, 135 S.Ct. 2551 (2015).

Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: 7-26-2016

*/s Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE